Our argument is 20-1881 INVT SPE v. Apple. Mr. Harding, whenever you're ready. Thank you, Your Honor, and good morning, and may it please the Court. My name is John Harding. I'm with the law firm Robbins Kaplan, and I represent the appellant and the owner of the 711 patent, INVT SPE LLC. Here, the Board's final written decision must be reversed for two reasons. First, the Board construed the challenge claims such that the claims require the simultaneous transmission of multiple data items with different priority levels, higher priority specific data and other relatively lower priority data items. Neither the Board's final written decision nor the appellee's petition establishes any such teaching in the prior art. In fact, the appellee's- Hi, this is Judge Chen. Can you point me to where, in your view, the Board necessarily construed the claim as requiring two different levels of priority of data items? I understand that it construed the term specific data item to be something called a higher priority item-data item, but I didn't see the Board say that for the other reference type of data item in the claim, plurality of data items, that those plurality of data items are necessarily of some priority level that's lower than the specific data item. All I saw was the Board saying that the plurality of data items is simply other data, other different data. Your Honor, you are correct that the Board's claim construction ruling does not expressly say that the other remainder of the plurality of data item must be lower priority data, but higher- Wait a second. You just said the other plurality of data must be lower priority data. The Board didn't say that, correct? And I apologize if I misspoke. The Board said that the specific data must be higher priority data. That was the extent of its ruling. By construing the specific data as higher priority data in transmission, the remainder of the data must be relatively lower priority, and that is consistent with both the word higher, whereas the appellee's brief here would ask the court to rewrite it to be simply high priority, and it's also consistent with the use of the term in the specification where it is described as data given a higher priority in transmission from other data, and that's at Appendix 53, Column 3, Lines 59 to 60 of the patent. And it's also consistent with the overall invention of the 711 patent, which teaches- The data item, the specific data item, is data to be transmitted with poor channel quality, correct? That is one example of specific data that the patent identifies. And so, therefore, if your data that you're going to be transmitting is going over a poor channel quality transmission scheme, then it's deemed to be specific. It's deemed to be higher priority data because now we need to do some transmit diversity to this data item given the poor channel quality, and so that's why we're going to send it twice. Is that right? If I'm understanding your question correctly, Your Honor, yes. In that case, the 711 patent teaches that that data would be identified by the claimed apparatus as data requiring a higher priority in transmission and replicated, sent out twice using transmit diversity. So, I guess what I'm wondering, then, is why wouldn't it be possible that in those instances where all of the data that's about to be transmitted is about to be transmitted over known poor channel quality, why wouldn't you say, okay, we've got to do transmit diversity, then, to all of these in order to ensure a reliable transmission of all of that data? Well, Your Honor, that would be essentially going back to the prior art in this case, which is switching, where spatial multiplexing is used to speed up transmission and transmit diversity is used to where it slows down transmission, but it's used to replicate all the data and ensure that the data is received correctly. What the novelty of the 711 patent is, is in limiting the use of transmit diversity to specific data such that the benefits of spatial multiplexing can still be realized to some degree where you are transmitting different data at the same time out of different antennas. Just looking, just thinking through the logic of what the it's telling us that it wants to do transmit diversity, it wants to do data replication to data that's about to be transmitted with poor channel quality. And so, that's why it seems like the logical conclusion of that is when all of the data that's being transmitted has poor channel quality, what do you do? You would replicate it all, disclosure that says, well, we're going to hit a hard ceiling somewhere where we're not going to do transmit diversity in that instance on all of that data, even though all of it's going over poor channel quality, we're only going to do some of it. And we have our reasons why, but necessarily some of that data that's about to be transmitted over poor channel quality, we're not going to engage in transmit diversity. Is there something in the patent that suggests that? Well, the claim one, which the parties have treated as a representative claim, requires both the simultaneous use of spatial multiplexing and transmit diversity and states that transmit diversity is going to be used for the specific data item. So, spatial multiplexing does need to be used simultaneously. That was part of the board's ultimate final written decision concluding that spatial multiplexing and transmit diversity have to be used simultaneously with transmit diversity used for the specific data and spatial multiplexing used for the remainder of the data. Tell me on, sir, tell me on claim one, I'm looking at claim one now, what are you referring to in claim one? So, while I'm referring to the claim construction ruling in the final written decision, which ruled that as a whole, claim one requires the simultaneous use of spatial multiplexing, which is introduced in the preamble, and transmit diversity, which is introduced in element one C, as it was referred to by the parties, where you generate the replica data item. Well, the claim language we're looking at, which is a claim language at the end, right, under the we're in clause, where it talks about specific data items. I guess I'm just not quite seeing it. I have the same concern Judge Chen had, that channel conditions based on column three, if channel conditions are poor across the entire system, wouldn't all data simultaneously transmitted be considered specific data? And it seems to me that the patent does not exclude that circumstance. So, are you saying that the patent would exclude that circumstance? By construing the claim as requiring higher priority data, where higher is a relative term, and distinguishing over the prior art, which was the switching between transmit diversity and spatial multiplexing, yes, the patent requires that there be a higher priority specific, and then as a consequence, a relatively lower priority remainder of the plurality of data items. So, your patent, you're saying your patent would exclude an embodiment where channel conditions are poor across the entire system. And so, all that would be, all data would simultaneously be transmitted, would consider specific data, that that's not covered, that circumstance is not covered by this patent claim? If there was an apparatus operating, sending all the data via transmit diversity at a single time, that would not be an infringing transmission. Okay. Well, what about, is there a big difference between the word high and higher? Yes, Your Honor. I believe there is a very significant difference. High is simply a descriptive term, that is high priority. Higher, adding the ER, as the claim construction did, turns it into a relative term. You're higher than something else. And that portion of the specification talks about that the data is given a higher priority in transmission from other data. Confirming that it's a relative term, that's higher priority in transmission from the rest of the plurality of data. Right. And then when the passage in column three goes on and talks about how poor channel quality qualifies as specific data, then why can't we think about higher priority data as being, comparing channel quality, bad, poor channel quality versus good channel quality. And so, in those instances where you have good channel quality, you don't need to do transmit diversity. In other instances where you have bad channel quality, then you're a specific data item. You're a higher priority data item. And in those instances where it happens to be all bad channel quality across the board, then it's all specific data items. I mean, again, that just appears to be the logic of what I see at the bottom of column three. I know you want to tell me that, well, the patent contemplates having data that you want to do transmit diversity to that is transmitted at the same time as data that you don't want to or need to do transmit diversity to. But when you look at the claim and you look at the idea of specific data item and a plurality of data items, the term plurality of data items is a fairly vague, non-limited term. And it doesn't really tell us necessarily that the so-called plurality of data items are necessarily data that's about to be transmitted over good channel quality. So that's the concern I have. What is it about the term, the phrase plurality of data items? Those words alone that drive an outcome that necessarily means that plurality of data items are being transmitted over good channel quality. Sorry, Aaron. I'm contemplating your question. I don't believe there is anything about the term plurality of data items that necessarily means it's being transmitted across good channel conditions. The point that I'm trying to make is that the construction, which as the board noted, no party disputed and was applied, is higher priority. And it's based on the first part of that portion of column three, which distinguishes higher priority from other data. And that's, again, consistent with the purpose of the invention, which is to maximize the use of spatial multiplexing and transmit diversity simultaneously. I would also note that this distinction between high and higher was first raised on appeal by the appellees in this case. It was never disputed. It was never raised in front of the board. As the board's final written decision notes, the parties applied the construction requiring higher. Now, on appeal, appellees have felt there is some distinction between higher and higher. Because they've tried to rewrite it as simply high. They would ask the court to remove the letters ER from the word higher. Higher is the construction, and that's what the parties applied. And that is where the final written decision and the appellee's petition failed. It does not identify data that is higher or lower. And in fact, when the board was going through our arguments in its final written decision at page 24, it acknowledged our argument that it did not show higher or lower priority data. It did not respond by saying that's not the construction we came up with, but it did not also identify higher priority data. Instead, it said, you know, Walton teaches the use of transmit diversity for certain types of data, but it never identified a teaching in higher and lower priority data could be simultaneously transmitted as is the claim construction would require. Okay. I think I heard the buzzer go off. Why don't we hear from the other side, and we'll reserve your rebuttal, Mr. Harding. Thank you. Mr. Hart. Thank you, Your Honor. May it please the court, Paul Hart for Appellee Apple. Appellant is wrong that the board's claim construction requires the third data item be not only different, but also of lower priority than the replicated data. Well, so what is the high versus do you agree or disagree with your friend that high priority is different than higher priority and that the latter necessarily means that there has to be some relative, in other words, something has to be high and something has to be lower? We do agree that higher has a, brings a connotation of relativity, and we are not trying to read out that connotation from the claim construction. The question is relative to what? The 711 patent at Appendix 5253, Columns 2 to 3 describes a process of processing a transmission signal comprised of multiple data items within that stream and recognizing which ones are important data. Then it categorizes those as specific data such that they can be replicated and given higher priority in transmission. So the relativity here is higher priority data is relative to other data items in that stream. Your Honor's pointed out that one of the examples of specific data within the 711 patent is data transmitted to a user experiencing poor channel conditions. In that example, during the period, or when the user is experiencing poor conditions, all data items sent to that user will be designated as higher priority and will be replicated for transmission. So those are higher priority data items than the periods when the channel resolves and that user is no longer experiencing poor channel conditions. So again, it's relative to the overall data stream. It is not, as Appellant argues, limited to a single moment in time, specifically the moment of transmission. It does not require that there be a differential in priority between multiple data items simultaneously transmitted. Mr. Hart, Judge Plager, are you disagreeing with Judge Chen's suggesting that higher relates to the channel issue rather than to a specific data issue? Is that what you're now saying? I think Judge Chen was exactly right to point out that one of the examples in the patent of user experiencing poor channel conditions. I think it's also very important to know that the claims themselves are limited to sending multiple data items to a single user. The preambles expressly state that the claims are directed to transmitting a plurality of data items for a same receiving apparatus. And so if we go to the example that Judge Chen pointed out in column three, the very last paragraph there, we have four types of higher priority specific data. Control data, retransmission data, the third is data transmitted to a receiving side having poor conditions, and the fourth is data transmitted to a receiving side having a higher moving speed. Those last two, the poor conditions and higher moving speed, would cause every single data item sent to that user to be designated specific data and treated with a higher priority in transmission. That means during the periods where that user is experiencing poor channel conditions or has a higher moving speed, there will be no difference in priority between the data items sent to that user. Mr. Hart, this is Judge Plager again. Just for a moment, can I change the subject briefly to the question of Paul Raj's figure 11a? I didn't get a chance to ask this of your colleague on the other side, but help me understand. What is your position on figure 11a? Can you clarify that for me? Yes, absolutely, Your Honor. Those figures 9a and figure 11a teach multiple inputs. They teach multiple antennas for transmitting those inputs. They both teach transmit processor 314. I believe it's 314a and 9a and 314c and 11a. That transmit processor is what performs the transmit diversity processing. That's the process where one input is replicated such that it can be sent at the same time over two antennas. That's where the Walden reference comes in. Based on this claim construction, appellant's claim construction that would require a difference in priority for the data items that are sent, the different data items that are sent, they pointed out that figure 11a has its two inputs derived from the same data source such that when they are replicated and sent out, they would all be of the same priority at a given moment in time, moment of transmission. Figure 11 does not have that same limitation. The DTM stream, as you can see in figure 11, is at the top followed by the AU. Those both derive from the data input and will likely have the same priority. The third data input there is a voice stream. Voice is unrelated to the first two, meaning that there's no restriction that it has the same priority as those first two. When Walden's transmit diversity teachings are implemented in figure 11a, when there is a piece of data that should be treated as higher priority such that it is replicated twice, there's no limitation that the other data sent at the same time will be of the same priority. Isn't it a problem for you that the board, as I recall, didn't refer to figure 11a? Well, the board did not refer to figure 11a at all. However, the board's factual findings do support a finding of obviousness based on 11a. Figures 9a and 11a are nearly identical. They both teach the same transmit diversity processor, 314. That transmit diversity processor, 314, is what our motivation and combined turned on. We analyzed 314 processor kind of in isolation without regard to specific embodiments to 9a specifically or 11a specifically. When the board held that one of Skill and Lear would have been motivated to modify transmit processor 314, implement the diversity processing of Walden, and to transmit the replicated data simultaneously pursuant to the third reference Wong, that finding also applies to figure 11a. To be sure, under Chenery, affirming the agency on grounds not addressed by the board is generally improper, but there are exceptions to that rule. In Killop v. OPM, 991 F. 2nd, 1564, this court held that it may affirm a board on grounds other than those relied upon. When upholding the board's decision does not depend on making a determination of fact not previously made. Here, if the court were to conclude that the claims required simultaneously transmitting data is required to conclude that the proposed combination based on 11a also renders the challenge claims obvious. The criticism of 9a does not apply to 11a. There's no dispute there. There's no competing expert testimony. We mapped 11a throughout our petition. Patent owner, Helen here, did not respond and did not address 11a in its papers. It did not have an expert address 11a at all, so there's no competing expert testimony. Just to be clear, my understanding is your in-depth discussion of figure 11a didn't arise until your reply, which came after the patent owner's response. That is appellant's contention. It is incorrect. Wait a second. Why is that wrong? All of this discussion about figure 11a allegedly having two different data streams that would have two different levels of priority, and by the way, figure 11a, there's no discussion in Paul Raj that exactly says that, but nevertheless, this discussion of figure 11a and this buildup of this new theory didn't get developed until the reply. The best that you had in your actual petition was a footnote, which didn't express this theory of having two different streams of data with two different levels of priority. That is absolutely correct, but we did not discuss figure 11a in the context of a claim construction that would require different priority data items transmitted simultaneously. Our petition did not assume that specific data item should be construed as data given higher priority in transmission as the board adopted or certainly did not assume that it would be interpreted as requiring a data item priority as appellant now insists. All of our responses to this differential priority argument that this appeal turns on essentially came in the reply and at the oral argument. You are absolutely right on that. My point was that throughout our mapping of claim one, we referenced 11a at every point where we referenced 9a. Anytime there was any relevant discussion to point out differences and why those differences were not pertinent to post-combination, we did so. I would also point out that claim three specifically requires a CDMA application. That is figure 11a. Figure 11a is the CDMA embodiment in Paul. Our mapping for claim three in our petition assumed that claim one was fully mapped to the Paul Raj 11a embodiment. My point was just that we gave INVT appellant here full notice that we were relying not only on figure 9a but also on Paul Raj figure 11a. It was appellant who made the decision not to address 11a in its patented response and not to have an expert address figure 11a at all. Sir? Mr. Hart? Yes. I apologize. I believe I have hit all the high points. I would just reiterate that based on the discussion today, it is clear that appellant's proposed interpretation of the claims is not the interpretation adopted by the board, nor is it the proper interpretation of the challenge claims. The intrinsic record makes clear that the 711 patent contemplates two different scenarios in which all data items sent to a single user would be treated as higher priority and replicated to improve their production quality. Patent owners' interpretation of the examples that are described by the 711 patent are excluded by appellant's interpretation of the challenge claims here, and that is improper. Second, if this court adopts appellant's narrow interpretation of the claims, it is still proper to affirm the board's holding based on our mapping of the figure 11a embodiment from Paul Raj. If there are no further questions, thanks very much for your time. Hearing none, okay, Mr. Harding, you've got some rebuttal time left. Thank you, Your Honor, and I'll be brief. And I'll start briefly with figure 11a. As I believe Your Honors recognize, the issue here is that the appellees are now analyzing figure 11a for something entirely different. They're saying, turn to it for higher priority data where there is a relative nature between higher and something lower. That is the issue that we were not put on notice of through their petition, where they argued 9a, and then they argued 11a as a C.S., and they did not distinguish between the two types of data, higher and lower. Relatedly, they now assert that figure 11a can be a configuration that transmits two different types of data, priority levels, but that's not even what they argue in their briefs. Where they argue in their briefs is that figure 11a, that the data does not need to be of equal priority, but does not need to be, does not equate to, shows data of different priority levels. That's where their petition failed to meet their burden to show different priority data levels. And that brings us back to kind of Judge Chen's questions from the beginning. And we would agree that there are real-world uses of this type of a phone, for example, that embodies this specification, where you would not need to use both transmit diversity and spatial multiplexing simultaneously. But that's not what this patent covers, and that's not how the board construed the claims, to require the simultaneous use of transmit diversity and spatial multiplexing, where transmit diversity is used for higher priority data. So the claims requires the capability to do both at a single point in time, and to use transmit diversity for higher priority data, which as Apelli's own brief acknowledges, is different than HIE. If HIE and HIE were the same, they would not have had to spend half their brief arguing that only HIE is required. And I believe, Your Honor, that that is about the extent of my rebuttal time, unless there's any other questions. I will thank the court for its attention and questions today. Thank you. We thank both sides, and the case is submitted. That concludes our proceeding for this morning. Thank you all. The honorable court is adjourned until tomorrow morning at 10 a.m.